IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| J. WHITE, L.C.; et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG WISEMAN; et al., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING:** <br> • **[159] EVOLUTION INSURANCE BROKERS MOTION TO DISMISS** <br> • **[181] RU SUNNY MOTION TO DISMISS** <br> • **[193] VERACITY INSURANCE SOLUTIONS MOTION TO DISMISS** <br><br> Case No. 2:16-cv-01179-DBB-JCB <br> District Judge David Barlow |

Before the court are three motions to dismiss. Defendant Evolution Insurance Brokers (EIB) requests dismissal for Plaintiffs' failure to plausibly allege its vicarious liability for the conduct of Defendants RLL and RLLRPG.[1] EIB also argues that Plaintiffs have failed to state a civil conspiracy claim against it.[2] Defendant RU Sunny requests dismissal because, while the alleged scheme at the heart of Plaintiffs' complaint developed through October 2015, RU Sunny did not exist and did not own any of the properties at issue.[3] Defendant Veracity Insurance Solutions (Veracity) requests dismissal of claims against it because the statutes of limitations have run.[4]

---

[1] Evolution Insurance Brokers Motion to Dismiss, ECF No. 159 at 6.

[2] *Id.* at 12.

[3] RU Sunny Motion to Dismiss, ECF No. 181 at 3.

[4] Veracity Insurance Solutions Motion to Dismiss, ECF No. 193.

**BACKGROUND[5]**

Apartment Management Consultants (AMC) manages the day-to-day operations of residential rental properties.[6] The rental-property owner defendants in this case retained AMC to manage some of their properties in approximately twenty-five states, including Utah.[7] The property owners retained AMC-CA to manage some of their properties in California.[8]

In 2009, the property owners began requiring rental-unit tenants to carry renter's liability insurance.[9] White and Wiseman formed WWIG to offer the AMC tenants the required insurance.[10] They received the necessary license to sell the insurance in Utah on November 11, 2009, and over the next few years they received licenses in several other states.[11] White and Wiseman formed ARIS in November 2009 as a pure captive of AMC.[12] And they formed WW-ARIS, a holding company for ARIS, in February 2010.[13]

Working with AMC, WWIG created a group master policy automatically qualifying AMC tenants for liability and personal property protection coverage.[14] On February 1, 2010, WWIG entered into marketing agreements with some of the property owners of AMC-managed

---

[5] The court recites the factual allegations contained in the Amended Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.'" (citation omitted)).

[6] Fourth Amended Complaint (Amended Complaint), ECF No. 116 at ¶ 35.

[7] Amended Complaint at ¶¶ 37, 38, 39. Plaintiffs refer to Defendants PCCP JSP Fairway, LLC;  PCCP JSP Springs, LLC; Greenfield Investments, LLC (terminated as a party); SLC 2100 South 2010, LLC; RW Wasatch, LLC; RU Sunny, LLC; Brookwood Investments, LLC; Villa Franche Investments, LLC; Howard-Ellis Company, LLC; and other unnamed Doe owners as "Utah Property Owners." *See id.* at ¶¶ 11–28.

[8] *Id.* at ¶¶ 42–44.

[9] *Id.* at ¶ 46.

[10] *Id.* at ¶¶ 48–55.

[11] *Id.* at ¶¶ 67, 68.

[12] *Id.* at ¶¶ 60–63. A "captive insurance company" is defined as "[a] company that insures the liabilities of its owner." INSURANCE COMPANY, Black's Law Dictionary (11th ed. 2019).

[13] Amended Complaint at ¶¶ 64–66.

[14] *Id.* at ¶ 69.

properties authorizing WWIG to market and sell insurance to tenants (Marketing Agreements).[15] Under the terms of the Marketing Agreements, AMC collected the insurance premiums along with the rent and delivered the premiums to WWIG.[16] On June 1, 2010, WWIG began selling its insurance products to tenants.[17] On March 15, 2011, Wiseman sold his interest in WWIG to WWIG and sold his interest in WW-ARIS to WW-ARIS, making White the sole owner of each entity.[18] By November 30, 2012, WWIG had entered into insurance agreements with nearly 30,000 tenants.[19]

On July 26, 2012, Wiseman suggested that WWIG offer a portion of the collected premiums to property owners in order to guarantee renewal of the Marketing Agreements.[20] In response, Mr. White asserted that the proposed kickback scheme was unlawful under the Utah Insurance Code.[21] Consequently, WWIG declined Wiseman's proposal. In December 2012, Wiseman informed White that another insurance company, Renters Legal Liability (RLL), offered to replace WWIG as the rental insurance provider.[22]

RLL worked with EIB, Veracity, and other insurance underwriters to provide their own Master Group Policy coverage to AMC tenants.[23] On December 2, 2012, AMC, acting on behalf of the property owners, notified WWIG that the property owners were terminating the Marketing

---

[15] *Id.* at ¶¶ 70, 71.

[16] *Id.* at ¶ 71.

[17] *Id.* at ¶ 74.

[18] *Id.* at ¶¶ 76, 77. Wiseman remained a manager of WWIG until August 2011, and he remained a board member and manager of WW-ARIS until December 26, 2012 and March 1, 2013, respectively. *Id.* at ¶¶ 79, 80.

[19] *Id.* at ¶ 81.

[20] *Id.* at ¶ 86.

[21] *Id.* at ¶ 87.

[22] *Id.* at ¶¶ 88, 89, 90.

[23] *Id.* at ¶ 90.

Agreements.[24] Also in December 2012, AMC notified the tenants in a letter (Solicitation Letter) that the property owners were terminating its Marketing Agreements with WWIG and that RLL would replace WWIG as its pay-with-rent insurance provider.[25] AMC indicated that tenants would no longer be able to pay WWIG premiums with their rent as of February 28, 2013.[26] At the time the Solicitation Letter was sent, Wiseman was a manager of WW-ARIS and was on the board of directors of ARIS.[27]

AMC's Solicitation Letter offered the tenants of AMC-managed properties "a liability only master policy that will allow [tenants] to comply with the terms of your rental agreement at a favorable price of only $10.00 a month."[28] The offered policy was provided through RLL.[29] Of the ten dollar monthly premium, the property owners or AMC kept approximately $3.05.[30] By the end of September 2013, AMC had stopped collecting tenants' premiums for WWIG rental insurance and by November 2015, WWIG no longer had any customers in AMC-managed properties.[31]

Beginning October 2014, despite RLL's provision of a group master policy for tenants, AMC claimed the ten-dollar monthly premiums were "extra rent" for an "Owner Damage Loss Waiver," to waive the liability insurance requirement in the rental lease agreements.[32] In an effort to cover all property owners' AMC-managed properties with a single master group policy,

---

[24] *Id.* at ¶ 91.

[25] *Id.* at ¶ 92.

[26] *Id.* at ¶ 92.

[27] *Id.* at ¶¶ 94, 95.

[28] *Id.* at ¶ 93.

[29] *Id.*

[30] *Id.* at ¶ 97.

[31] *Id.* at ¶ 120, 121.

[32] *Id.* at ¶¶ 125, 126.

RLL formed RLLRPG, a risk purchasing group providing liability coverage.[33] As a result of

RLL's arrangement with AMC to replace WWIG as rental insurance provider, ARIS, the AMC

captive insurance carrier managed by WWIG, could no longer operate under its original business

model developed by Wiseman and White.[34] ARIS dissolved on July 7, 2014.[35]

Plaintiff filed the instant action on November 21, 2016.[36] On September 27, 2019,

Plaintiffs filed a Fourth Amended Complaint naming, among others, Defendants EIB, RU Sunny,

and Veracity.[37]

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege sufficient

facts "to state a claim to relief that is plausible on its face."[38] A claim is plausible if "the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."[39] Where the well-pleaded facts "are 'merely consistent with' a

defendant's liability," the plaintiff has not crossed the "'line between possibility and plausibility

of entitlement to relief.'"[40] A court reviewing a complaint under Rule 12(b)(6) must "accept as

true all well-pleaded factual allegations . . . and view them in the light most favorable to the

---

[33] *Id.* at ¶¶ 129, 130, 135.

[34] *Id.* at ¶¶ 152, 153.

[35] *Id.*

[36] *See* Complaint, ECF No. 2.

[37] *See* Amended Complaint, ECF No. 116.

[38] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[40] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[plaintiff]."[41] Bare assertions and conclusory allegations are not entitled to the presumption of truth.[42]

## I.   Plaintiffs Have Not Plausibly Alleged RLL or RLLRPG Were Agents of EIB.

Plaintiffs' Fourth Amended Complaint asserts no direct causes of action against EIB. Instead, the fourteenth cause of action avers that EIB is secondarily liable under the doctrine of respondeat superior for the alleged misrepresentations made by RLL and RLLRPG that violate the Lanham Act.[43] Section 43(a) of the Lanham Act prohibits, among other things, the use of "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."[44] Respondeat superior is a doctrine applicable to the employer/employee relationship.[45] Here, there is no allegation that RLL, RLLRPG and EIB had an employer/employee relationship.[46] Under the common law principle of vicarious liability, however, a principal may be subject to liability for a tort committed by an agent.[47] Based on this alleged liability, plaintiffs also assert that EIB

---

[41] *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).

[42] *Iqbal*, 556 U.S. at 681.

[43] ECF No. 116 at ¶¶ 305–08.

[44] 15 U.S.C. § 1125(a)(1)(B); *see Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126–28 (10th Cir. 2003).

[45] *See M.J. v. Wisan*, 2016 UT 13, ¶¶ 59, 68, 371 P.3d 21 (explaining the respondeat superior factors are (1) "whether the agent's conduct is of the general kind the agent is employed to perform," (2) whether the agent "was acting within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control," and (3) "whether the agent's acts were motivated, at least in part, by the purpose of serving the principal's interest" (brackets and internal quotation marks omitted) (quoting *Birkner v. Salt Lake County*, 771 P.2d 1053, 1057 (Utah 1989) and Restatement (Third) Of Agency § 7.07(2) (Am. Law Inst. 2006)).

[46] Amended Complaint, ECF No. 116.

[47] *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013) ("Vicarious liability arises when common-law principles of agency impose liability on the defendant for the infringing acts of its agent."); *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment.").

conspired with others to commit Lanham Act violations. At issue, then, is whether plaintiffs have adequately alleged an agency relationship to sustain these two causes of action.

A principal may be liable for actions of an agent who acts within the scope of its authority.[48] "An agent is 'a person authorized by another to act on his behalf and under his control.'"[49] To establish agency, a party must show (1) the principal manifested its intent that the agent act on its behalf, (2) the agent's consent to act on the principal's behalf, and (3) that both the principal and the agent understood  that the agent is subject to the principal's control.[50]

In this case, Plaintiffs assert that EIB "worked with defendant RLL to provide the underlying Master Group Policy coverage for the policies RLL marketed to the tenants residing in AMC-managed residential rental properties."[51] That one entity "worked with" another entity does not make either the agent of the other. Plaintiffs also allege that EIB "knew or should have known of the unlawful kickbacks" RLL allegedly provided to the Property Owners.[52] But EIB's knowledge of the payments to property owners does not establish agency. Plaintiffs have not alleged that (1) EIB manifested its intent that RLL act on its behalf; (2) RLL consented to act on EIB's behalf; or (3) EIB and RLL both understood that RLL was subject to EIB's control.[53]

---

[48] Restatement (Third) Of Agency § 7.04 (2006).

[49] *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1278 (10th Cir. 2000) (quoting *Vina v. Jefferson Ins. Co. of New York*, 761 P.2d 581, 585 (Utah Ct. App. 1988)).

[50] *See Stamper v. Johnson*, 2010 UT 26, ¶ 19, 232 P.3d 514 (citing *Wardley Corp. v. Welsh*, 962 P.2d 86, 89 (Utah Ct. App. 1998); Restatement (Second) of Agency § 1 (1958)).

[51] Amended Complaint at ¶ 90. In conclusory fashion, Plaintiffs also assert that "RLL and RLLRPG were agents for EIB[.]" Amended Complaint at ¶ 306; *id.* ¶ 45. Considering a motion to dismiss, the court accepts factual allegations in the complaint as true, but it need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

[52] Amended Complaint at ¶ 118.

[53] *See Stamper*, 2010 UT 26, ¶ 19; Restatement (Second) of Agency § 1 (1958)).

Consequently, Plaintiffs have not alleged sufficient facts supporting a plausible principal-agent relationship.[54] EIB's motion to dismiss[55] is GRANTED and all claims against EIB are dismissed.

## II.     Plaintiffs Have Not Alleged Facts Establishing RU Sunny's Participation in the Alleged Scheme to Replace WWIG and ARIS.

Plaintiffs generally allege that RU Sunny is one of the several property owners that, working with AMC, conspired to replace WWIG as the renter insurance policy provider with RLL and RLLRPG in 2012 and 2013.[56] Defendant RU Sunny asserts that it did not exist as an entity during the events at issue in this case and therefore argues that the court should take judicial notice of these facts and dismiss Plaintiffs' claims against it.

In addition to the facts alleged in the complaint, RU Sunny requests that the court take judicial notice of its Entity Details from the Utah Department of Commerce, specifically that it was registered as an entity on August 17, 2015.[57] RU Sunny also requests that the court take judicial notice of the recorded deed conveying a residential rental property to RU Sunny on October 30, 2015.[58] The court may take judicial notice of "a fact that is not subject to reasonable dispute" because it is generally known or "can be accurately and readily determined from

---

[54] Plaintiffs argue that they are entitled to a rebuttable presumption of agency under the Utah Insurance Code. ECF No. 197 at 9. But Plaintiffs do not allege that EIB is an insurer, that it appointed RLL as a licensee, or indeed that EIB entered into any agreement with RLL or RLLRPG. *See* Utah Code Ann. § 31A-23a-405(2) (LexisNexis 2019). Consequently, this provision is inapplicable.

[55] ECF No. 159.

[56] Amended Complaint at ¶¶ 23, 24, 28. Plaintiffs assert the following claims against RU Sunny: (1) False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (First Cause of Action); (2) Unfair Business Practices in Violation of California Bus. and Prof. Code § 17200 (Second Cause of Action); (3) Wrongful Interference with Existing Contractual Relations in the TENANT INSURANCE CONTRACT (Sixth Cause of Action); (4) Intentional Interference with Prospective Economic Relations (Seventh Cause of Action); (5) Wrongful Interference with Existing Contractual Relations – MARKETING CONTRACT (Eighth Cause of Action); (6) Civil Conspiracy (Ninth Cause of Action); (7) Respondeat Superior – Utah Property Owners (Thirteenth Cause of Action).

[57] RU Sunny Motion to Dismiss, ECF No. 181 at 7–9, Exh. 1.

[58] *Id.*

sources whose accuracy cannot reasonably be questioned."[59] "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."[60] Because they are matters of public record, the court exercises its discretion to take judicial notice of the dates of RU Sunny's entity registration and acquisition of one of the properties at issue.[61] "[F]acts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment."[62]

Accepting that RU Sunny became an entity and acquired one of the residential rental properties in late 2015, the question is whether Plaintiffs have stated claims against it upon which relief may be granted. With respect to the Lanham Act claim, Plaintiffs allege that Defendants, including RU Sunny, sent a solicitation letter in 2012 that constitutes false advertising. But RU Sunny did not exist at that time and could not have participated. Plaintiffs counter that RU Sunny is liable for continuing harm and may be liable as a successor.

To meet the first element of a false advertising claim under the Lanham Act, the "commercial advertising or promotion"[63] showing, the Plaintiff must establish that the defendant

---

[59] Fed. R. Evid. 201(b).

[60] *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000)*, abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

[61] *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) ("The court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." (brackets and internal quotation marks omitted) (quoting *Van Woudenberg*, 211 F.3d at 568). These facts are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

[62] *Grynberg*, 390 F.3d at 1278 n.1 (citing 27A Fed. Proc., L.Ed. § 62:520 (2003)).

[63] To state a claim under § 43 of the Lanham Act, a plaintiff must establish:

> (1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

*Digital Ally, Inc. v. Util. Assocs., Inc.*, 882 F.3d 974, 978 (10th Cir. 2018) (citation and internal quotation marks omitted).

engaged in: "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services . . . [and] (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."[64] Plaintiffs have not alleged that RU Sunny was or is a commercial competitor with Plaintiffs and Plaintiffs have not alleged false advertising statements by RU Sunny following RU Sunny's formation and acquisition of one of the properties managed by AMC.

Regarding successor liability, although Plaintiffs argue for it in their opposition to the motion to dismiss, they do not assert successor liability in the Amended Complaint. Similarly, Plaintiffs have not alleged any conduct RU Sunny engaged in, after its formation, that would support Plaintiffs' other claims. Consequently, Plaintiffs have not alleged claims against RU Sunny upon which relief may be granted. RU Sunny's motion to dismiss[65] is GRANTED and all claims against it are dismissed.

### III.   Because the Relevant Limitations Periods Have Expired, No Relief Is Available to Plaintiffs for Veracity's Alleged Conduct.

Plaintiffs allege that Veracity is an insurance underwriter "who, on information and belief, participated in the wrongful conduct at issue in this action and [is] therefore responsible, at least in part for the damages caused to plaintiffs by Defendants' wrongful conduct."[66] For Veracity's role in the alleged renter-insurance kickback scheme, Plaintiffs assert several claims, including: false advertising under the Lanham Act; unfair business practices under the California Unfair Practices Act; wrongful interference with existing contractual relations in the tenant

---

[64] *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020) (citation and internal quotation marks omitted).

[65] ECF No. 181.

[66] Amended Complaint at ¶ 30 (emphasis omitted). Plaintiffs also argue that RLL or RLLRPG are agents of Veracity. *Id.* at ¶ 45.

insurance contract; intentional interference with prospective economic relations; wrongful interference with existing contractual relations; civil conspiracy; and respondeat superior.

Courts have applied the state fraud claims statute of limitations when determining the limitations period applicable to a Lanham Act false advertising claim.[67] In Utah, an action based on fraud must be brought within three years, "except that the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake."[68] The California Unfair Business Practices Act must be brought within one year in Utah because it involves "liability created by the statutes of a foreign state."[69] The remaining claims are subject to a four-year statute of limitations.[70] "A statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished."[71]

Plaintiffs' claims here stem from an alleged kickback scheme in which ARIS and WWIG lost their position as preferred renter insurance policy providers for tens of thousands of rental units in some AMC-managed properties.[72] On July 26, 2012, Wiseman proposed that WWIG provide a portion of its received premiums to the rental property owners in order to guarantee

---

[67] See Albion Int'l, Inc. v. Am. Int'l Chem., Inc., 2012 WL 3776866, at *5 (D. Utah Aug. 30, 2012).

[68] Utah Code Ann. § 78B-2-305(3).

[69] Utah Code Ann. § 78B-2-302(1).

[70] See DOIT, Inc. v. Touche, Ross & Co., 926 P.2d 835, 842 (Utah 1996) (applying an earlier version of the state's general four-year limitations period to civil conspiracy); Russell/Packard Dev., Inc. v. Carson, 2003 UT App 316, ¶ 11, 78 P.3d 616 (applying the four-year statute of limitations to claims of intentional interference with prospective economic relations), aff'd sub nom. Russell Packard Dev., Inc. v. Carson, 2005 UT 14, 108 P.3d 741; Cannon v. PNC Bank, N.A., 2016 WL 9779290, at *7 (D. Utah Aug. 31, 2016) (applying Utah's general four-year statute of limitations to claims of tortious interference with contract).

[71] Sierra Club v. Oklahoma Gas & Elec. Co., 816 F.3d 666, 671 (10th Cir. 2016) (brackets, citation, and internal quotation marks omitted).

[72] This is limited to those properties managed by AMC and owned by the named property owner Defendants. Amended Complaint at ¶¶ 38–40. Between 2010 and 2012, WWIG entered into insurance agreements with approximately 30,000 tenants of AMC-managed properties. Id. at ¶ 81.

renewal of its Marketing Agreement and preserve its position. White responded by notifying Wiseman that the proposed scheme was prohibited by Utah's Insurance Code.[73] A few months later, on December 2, 2012, the property owners terminated their Marketing Agreements with WWIG.[74] By July 2014, White and Wiseman's business model—providing policies to the property owners' AMC-managed properties—had failed and ARIS was dissolved.[75]

"Generally, a cause of action accrues upon the happening of the last event necessary to complete the cause of action."[76] To state a cause of action under the Lanham Act, a plaintiff must allege economic injury flowing from deception wrought by a defendant's false advertising.[77]

Here, the alleged false advertising is AMC's December 2012 Solicitation Letter to tenants explaining that it would no longer accept premium payments for WWIG with rent after February 2013, that rental insurance was still required under the lease agreement, and that RLL offered a liability policy "at a favorable price of only $10.00 a month."[78] AMC also noted that it would accept RLL payments with rent.[79] Veracity and the other Defendants, Plaintiff alleges, "falsely advertised the nature, characteristics, quality and/or cost" of the RLL product.[80] As a result, Plaintiffs suffered a "competitive injury" and they lost rental insurance contracts in AMC-managed properties.[81] The AMC pay-with-rent option, according to Plaintiffs, "was crucial to the

---

[73] *Id.* at ¶¶ 54, 56, 86, 87.

[74] *Id.* at ¶ 91.

[75] *Id.* at ¶ 153.

[76] *Berenda v. Langford*, 914 P.2d 45, 50 (Utah 1996) (citation and internal quotation marks omitted).

[77] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).

[78] Amended Complaint at ¶ 93.

[79] *Id.*

[80] Amended Complaint at ¶ 200.

[81] *Id.* at ¶ 206.

success and viability of the WWIG insurance program."[82] Because it no longer functioned as originally intended, ARIS dissolved on July 7, 2014.[83]

The false advertising cause of action was thus complete when Defendants' advertising allegedly caused Plaintiffs to lose business with tenants and when AMC removed the pay-with-rent option in February 2013. Accordingly, the statute of limitations began to run no later than March 2013. Even assuming, however, that Plaintiffs' cause of action did not accrue until ARIS dissolved in July 2014, the three-year statute of limitations expired before Plaintiffs asserted the cause of action against Veracity in September 2019.

Under the California Unfair Practices Act, a plaintiff must "describe a scheme to mislead customers, and allege that each misrepresentation to each customer conforms to that scheme."[84] Again, the alleged consumer deception occurred in December 2012 and Plaintiffs' injuries were known no later than March 2013. Under Utah's statute of limitations for out-of-state causes of action, Plaintiffs failed to assert this deceptive-practices claim against Veracity within one year.

As for Plaintiffs' tortious interference claims, the cause of action accrues when the following elements have occurred: "(1) the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff."[85] Here, Plaintiffs' Marketing Contracts were terminated in December 2012. As a result, WWIG was injured in the form of lost tenant insurance contracts, and Plaintiffs knew no

---

[82] *Id.* at ¶ 72.

[83] *Id.* at ¶ 153.

[84] *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134 (2007) (brackets and internal quotation marks omitted) (quoting *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 212–13, 673 P.2d 660 (1983), *superseded by statute on other grounds as stated in Branick v. Downey Sav. & Loan Assn.*, 39 Cal. 4th 235, 241–42, 138 P.3d 214, 218 (2006)).

[85] *Eldridge v. Johndrow*, 2015 UT 21, ¶ 13, 345 P.3d 553. This standard applies to Plaintiffs' sixth, seventh, and eighth causes of action.

later than March 2013 that they no longer received premium payments via AMC's pay-with-rent option. The limitations period applicable to these causes of action is four years.[86] Plaintiffs asserted these claims against Veracity in September 2019, over six years later. Again, even assuming these claims did not accrue until ARIS ultimately dissolved in July 2014, Plaintiffs' recovery is time-barred.

To establish a civil conspiracy claim, Plaintiffs must show: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[87] This claim is subject to a four-year statute of limitations.[88] "Under Utah law, civil conspiracy requires, as one of its essential elements, an underlying tort."[89] Similar to a civil conspiracy claim, respondeat superior requires an underlying tort to extend liability from RLL or RLLRPG to Veracity.[90] Where plaintiffs fail to adequately plead an underlying tort, "dismissal of their civil conspiracy claim is appropriate."[91] Because Plaintiffs here have only pleaded time-barred torts against Veracity, their civil conspiracy claim must also be dismissed.

### a.  The Continuing Tort Doctrine Does Not Apply.

Plaintiffs contend that the statutes of limitations should be tolled under the continuing tort doctrine. "[W]here a tort involves a pattern of continuous and ongoing tortious conduct, the cause of action accrues and the period of limitations begins to run at the time the last injury

---

[86] Utah Code Ann. § 78B-2-307(3).

[87] *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987).

[88] Utah Code Ann. § 78B-2-307(3).

[89] *Jackson v. Volvo Trucks N. Am., Inc.*, 462 F.3d 1234, 1238 (10th Cir. 2006); *Puttuck v. Gendron*, 2008 UT App 362, ¶ 21, 199 P.3d 971.

[90] *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (explaining that "respondeat superior imposes liability for public policy reasons upon masters though they are not at fault in any way").

[91] *Puttuck*, 2008 UT App 362, ¶ 21, 199 P.3d 971 (citation and internal quotation marks omitted).

occurred or the tortious conduct ceased."[92] In cases of fraud, a limitations period "may be suspended by a repetition or continuation of the false representations which keeps the defrauded person in ignorance of the fraud."[93] However, the continuing tort doctrine "cannot be employed where the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress."[94]

Plaintiffs argue that Veracity has not identified "a date where the tortious conduct ceased because such conduct continues to this day."[95] However, the burden of pleading sufficient facts rests with Plaintiffs and cannot be cured by argument.[96] As to Veracity, the Fourth Amended Complaint contains very few fact allegations. Veracity is a Utah LLC that underwrites insurance policies pertaining to "some of the residential rental properties owned by the Property Owners . . . [and] has taken on an administrative role in administering some of the referenced insurance policies."[97] No facts are pleaded regarding when Veracity's alleged actions occurred. The Fourth Amended Complaint further alleges that Veracity, as one of a group of underwriter defendants, "participated in the wrongful conduct at issue" based on "information and belief."[98] Again, no dates are provided. Similarly, a conclusory agency allegation is made, but nothing specific to Veracity or any time period is alleged.[99] Additionally, it is alleged that "Veracity and

---

[92] *Bistline v. Parker*, 918 F.3d 849, 879 (10th Cir. 2019).

[93] *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996) (brackets omitted) (quoting 54 C.J.S. Limitations of Actions § 195 (1987)).

[94] *Id.* (citation and internal quotation marks omitted).

[95] ECF No. 212 at 10.

[96] *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298 (10th Cir. 2018) ("To defeat a motion to dismiss, a complaint must plead facts sufficient to state a claim to relief that is plausible on its face.").

[97] ECF No. 116 at ¶¶ 21, 29, 30,

[98] *Id.* at ¶ 30.

[99] *Id.* at ¶ 45.

15

other Underwriters worked with RLL," but no dates are provided.[100] The final references to

Veracity specifically are in the causes of action, where only conclusions of law are stated.

      For Plaintiffs that are seeking to avoid facially time-barred claims through the application

of the continuing torts doctrine, this is simply not enough. The Fourth Amended Complaint does

not contain facts alleged against Veracity that suggest "continuous and ongoing tortious

conduct." However, what the Fourth Amended Complaint does make clear is that Plaintiffs were

not ignorant of the alleged fraud. Plaintiffs knew that Defendants' alleged fraudulent conduct led

to the termination of the Marketing Agreements with the property owners in late 2012. Wiseman

suggested to White that WWIG offer a portion of the monthly premiums to the property

owners.[101] In December 2012, Wiseman informed White that RLL made substantially the same

offer to the property owners in order to replace WWIG as the tenant insurance provider for

whom AMC would accept premium payments with rent.[102] Indeed, Wiseman "offered on

numerous occasions to continue using WWIG if WWIG could provide the kickbacks that RLL

was offering."[103] In December 2012, the property owners terminated WWIG's Marketing

Agreements.[104] By July 2014, ARIS no longer functioned as intended and was dissolved.[105] In

sum, Plaintiffs: (1) were notified of a potential scheme in 2012, (2) were notified that RLL

proposed the scheme to the property owners in 2012, (3) were notified that the property owners

would be terminating WWIG's Marketing Agreements in 2012, (4) were aware of the resulting

injury when they began losing customers, and (5) knew their injuries were severe as of the

---

[100] *Id.* at ¶ 90 (emphasis omitted).

[101] Amended Complaint at ¶¶ 86, 87.

[102] *Id.* at ¶ 88.

[103] *Id.* at ¶ 114.

[104] *Id.* at ¶ 91.

[105] *Id.* at ¶ 153. ARIS paid WWIG to administer the ARIS tenant insurance contracts. *Id.* at ¶ 152.

dissolution of ARIS in 2014. Consequently, Plaintiffs' injury was "definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress."[106]

For all of these reasons, the continuing tort doctrine is inapplicable here.

### b.  The Discovery Rule Does Not Save Plaintiffs' Claims Against Veracity.

In Utah, the discovery rule applies "when there is (1) a statutory tolling provision, (2) an exceptional circumstance, or (3) fraudulent concealment."[107] The fraud statute of limitations contains a statutory tolling provision[108] and states that "the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake."[109] "A plaintiff is deemed to have discovered his action when he has actual knowledge of the fraud or by reasonable diligence and inquiry should know, the relevant facts of the fraud perpetrated against him."[110] "However, it is not necessary for a claimant to know every fact about his fraud claim before the statute begins to run."[111]

In this case, Plaintiffs contend Defendants "made numerous misrepresentations to tenants regarding the insurance product being offered by the RLL," and that "[t]hese misrepresentations were not fully known to the Plaintiffs until many years later."[112] Plaintiffs concede that, given

---

[106] *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996). Plaintiffs cite *Tiberi*, but only for the general definition of the continuing wrong doctrine, ignoring the requirement addressed above, as well as the fact that *Tiberi* involved false statements and misrepresentations that "prevented [plaintiff] from ascertaining the cause of his injury." *Id.*

[107] *Bistline*, 918 F.3d at 880 (citing *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2007 UT 25, ¶ 13, 156 P.3d 806).

[108] Utah Code Ann. § 78B-2-305(3). Because the second and third bases for application of the discovery rule are equitable in nature, they apply "*only* where a statute of limitations does not, by its own terms, already account for such circumstances—i.e., where a statute of limitations lacks a statutory discovery rule." *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 25, 108 P.3d 741.

[109] Utah Code Ann. § 78B-2-305(3).

[110] *Colosimo*, 2007 UT 25, ¶ 17 (citation and internal quotation marks omitted).

[111] *Baldwin v. Burton*, 850 P.2d 1188, 1197 (Utah 1993).

[112] ECF No. 212 at 9.

the facts alleged, they could not have known "*prior to July 2014*, that Defendants' advertising claims that they were selling insurance were false and misleading."[113] That is, they argue Veracity cannot show Plaintiffs' knowledge of the alleged fraudulent scheme before July 2014. Given the pleaded dates and knowledge of the scheme alleged in the complaint, Plaintiffs were on notice by at least July 2014. The limitations periods for each of Plaintiffs' claims against Veracity had run prior to Plaintiffs' Fourth Amended Complaint, filed September 2019. Accordingly, no recovery is available and dismissal is required.

### c.   Plaintiffs' Claims Do Not Relate Back to an Earlier Filed Complaint.

When an amended complaint, filed after expiration of the statute of limitations, incorporates a new defendant, the plaintiff must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure. Relation back will be allowed when three elements are met: "(1) same transaction or occurrence; (2) the new party had notice of the action, prior to the expiration of the statute of limitations; and (3) he knew or should have known that but for a mistake in identity the action would have been brought against him."[114] "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide."[115]

Plaintiffs filed their original complaint on November 21, 2016.[116] Plaintiffs filed their Fourth Amended Complaint, naming Veracity, on September 27, 2019.[117] In their request to amend, Plaintiffs explained that they had identified additional defendants previously referred to

---

[113] *Id.* (emphasis added).

[114] *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1390 (10th Cir. 1984).

[115] *McClelland v. Deluxe Fin. Servs., Inc.*, 431 F. App'x 718, 723 (10th Cir. 2011) (unpublished), quoting *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 150 n.3 (1984).

[116] ECF No. 2.

[117] ECF No. 116.

by fictitious names.[118] "[A]s a matter of law, a plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party'" under Rule 15(c).[119] In other words, Plaintiff has not shown that Defendant Veracity was on notice (or should have been on notice but for a mistake in identity) of the claims alleged in the original complaint. For purposes of the limitations periods, then, Plaintiffs Fourth Amended Complaint does not relate back to the original complaint.

## ORDER

For the reasons stated in this Memorandum Decision and Order, Defendant Evolution Insurance Brokers, LLC's Motion to Dismiss is GRANTED.[120] Defendant RU Sunny, LLC's Motion to Dismiss is GRANTED.[121] Defendant Veracity Insurance Solutions, LLC's Motion to Dismiss is GRANTED.[122]

Signed July 9, 2020.

BY THE COURT

David Barlow
United States District Judge

---

[118] ECF No. 95.

[119] *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004) (citing an earlier version of the rule).

[120] ECF No. 159.

[121] ECF No. 181.

[122] ECF No. 193.