IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| J WHITE, L.C., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GREGORY WISEMAN, et al.,<br><br>Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:16-cv-01179-DBB-JCB<br><br>District Judge David B. Barlow<br><br>Magistrate Judge Jared C. Bennett |

This case was referred to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Due to Judge Warner's retirement, this case is now referred to Magistrate Judge Jared C. Bennett.[2] Before the court is Plaintiffs J White, L.C., WWIG, LLC, and WW-ARIS, LLC's (collectively, "J White") Motion for Amended Scheduling Order.[3] The court held a hearing on J White's motion on July 14, 2020. For the limited purpose of the hearing only, J White was represented by Sean N. Egan. Defendants Gregory Wiseman, GWSVR, LLC, AMC-CA, and Apartment Management Consultants, LLC's (collectively, "AMC Defendants") were represented by Amy F. Sorenson and Douglas P. Farr. Defendants Renters Legal Liability and Renters Legal Liability Risk Purchasing Group (together, "RLL Defendants") were represented by Robert E. Mansfield. Defendant Berkeley Assurance Company ("Berkeley") was represented by Phillip S. Ferguson and Sarah E. Spencer. At the conclusion of the hearing, the court took the

---

[1] ECF No. 60.
[2] ECF No. 253.
[3] ECF No. 213.

motion under advisement. After consideration of the memoranda submitted by the parties, the relevant law, and the oral argument presented by counsel, the court renders the following Memorandum Decision and Order.

## BACKGROUND

J White initiated this action against the AMC Defendants and the RLL Defendants (collectively, "Original Defendants") over three-and-a-half-years ago, on November 21, 2016. On March 25, 2019—after the adjudication of two motions to dismiss, three amended complaints, five amended scheduling orders, and multiple filing extensions—J White requested leave to file a fourth amended complaint to add 13 new defendants ("New Defendants") to the case. On September 19, 2019, despite concerns of undue delay, the court granted the motion to amend because the motion was timely filed, and the court accepted that the motion was made in good faith. In the Order, however, the court notified J White that any future attempts to add parties would be closely scrutinized for undue delay, prejudice, bad faith, or dilatory motive.[4]

On October 23, 2019, after J White had filed the Fourth Amended Complaint but before any of the New Defendants had been served, the court entered the Sixth Amended Scheduling Order to which the Original Defendants reluctantly agreed. The Sixth Amended Scheduling Order certified that written fact discovery was closed, set December 20, 2019 as the fact discovery deadline, and set January 13, 2020 as J White's expert disclosure deadline.

On November 21, 2019, nearly 60 days after the Fourth Amended Complaint was filed, summonses were issued to J White to serve the New Defendants. All the New Defendants were served by December 3, 2019. Since then, the court has granted four motions to dismiss and six

---

[4] ECF No. 115.

motions to compel arbitration. Therefore, of the New Defendants, only three remain: (1) the Howard-Ellis Company never responded and is, therefore, not part of scheduling; (2) Berkeley, which has a motion to dismiss pending, which J White's new counsel admits will likely be granted; and (3) AMC-CA, which is the subsidiary of Original Defendant Apartment Management Consultants, LLC ("AMC") and, therefore, is not really a "new" party.

After the entry of Sixth Amended Scheduling Order, the Original Defendants continued with their own fact discovery, although the parties were unable to secure depositions of key witnesses until the court ordered the depositions to be taken at a recent hearing.[5] During the remaining time for fact discovery under the Sixth Amended Scheduling Order, J White engaged in almost no additional fact discovery before the extended fact discovery deadline of December 20, 2020, according to the Original Defendants. J White likewise did not designate or disclose any expert witnesses before expiration of the extended expert discovery deadline on January 13, 2020.

Over a month after missing the expert disclosure deadline, J White filed the instant motion to extend the scheduling order. The motion seeks to amend the scheduling deadlines for expert disclosures for the Original Defendants as well as establish fact and expert discovery deadlines for the New Defendants. In the motion, J White contends the scheduling deadlines should be amended to accommodate the New Defendants and to avoid unnecessary costs. The motion presents no explanation for why J White missed the expert disclosure deadline under the Sixth Amended Scheduling Order or why J White waited until after the discovery deadlines had

---

[5] ECF No. 284.

passed to file a seventh motion to yet again extend discovery deadlines. Moreover, J White's motion also provides no argument concerning its diligence to meet the deadlines in the Sixth Amended Scheduling Order. Between filing the instant motion and the hearing on that motion, J White obtained new counsel. At the hearing, J White's new counsel was unaware of why prior counsel had missed the expert disclosure and report deadlines and, understandably, could not explain the missed deadlines.

Both the Original and New Defendants oppose the instant motion, and argue, *inter alia*, that J White has failed to demonstrate good cause to modify the scheduling order and that they will suffer undue prejudice. Both AMC Defendants and RLL Defendants have also filed motions for summary judgment; however, J White has not yet responded. At the hearing on J White's motion to extend discovery deadlines, the parties requested the court enter briefing schedules for the summary judgment motions upon ruling on the instant motion. The court, therefore, addresses this request at the conclusion of this decision after ruling on J White's motion to extend discovery deadlines.

## LEGAL STANDARDS

Under Fed. R. Civ. P. 16(b)(4), the court may extend the deadlines in a scheduling order if the movant is able to demonstrate "good cause" for that modification. However, where, as here a party seeks the extension of time to perform "any act" after the deadline has passed, the court may extend the deadline only upon a showing of good cause and that the failure to act was due to excusable neglect. Fed. R. Civ. P. 6(b)(1)(B).

As the the Tenth Circuit Court of Appeals has recognized, "good cause" and "excusable neglect" are interrelated.

> Without attempting a rigid or all-encompassing definition of 'good cause,' it would appear to require *at least* as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of 'good faith on the part of the party seeking the enlargement *and* some reasonable basis for noncompliance within the time specified' is normally required.

*Broitman v. Kirkland* (*In re Kirkland*), 86 F.3d 172, 175 (10th Cir. 1996) (quoting *Winters v. Teledyne Movible Offshore, Inc.,* 776 F.2d 1304, 1306 (5th Cir.1985)) (citation omitted); *Putnam v. Morris,* 833 F.2d 903, 905 (10th Cir. 1987). "'[G]ood cause' requires a greater showing than 'excusable neglect.'" *Broitman,* 86 F.3d at 175.

The "good cause" standard primarily considers the diligence of the party. *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009). The party seeking the extension must show that despite due diligence it could not have reasonably met the scheduled deadlines. *Id*. This "means that it must provide an adequate explanation for the delay." *Id*. (citation omitted). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Deghand v. Wal–Mart Stores, Inc.,* 904 F.Supp. 1218, 1221 (D. Kan. 1995) (citations omitted). The lack of prejudice to the nonmovant does not show "good cause." *Id*.

Similarly, "excusable neglect" considers four factors: (1) the danger of prejudice to the opposing party, (2) the length of delay caused by the neglect and its impact on judicial proceedings, (3) the reason for delay and whether it was in the reasonable control of the moving party, and (4) the existence of good faith on the part of the moving party. *Hamilton v. Water Whole Intern. Corp*., 302 Fed. Appx. 789, 798 (10th Cir. 2008) (citing *United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004)). The reason for delay is an important, if not the most important, factor in this analysis. *Id*. (citing *Torres*, 372 F.3d at 1163).

## ANALYSIS

The court determines that J White has failed to establish good cause or excusable neglect to extend the expert disclosure deadlines for the reasons explained below. Thereafter, the court addresses the parties' request regarding briefing schedules for the pending motions for summary judgment.

### I. Motion to Modify Scheduling Order

J White has neither shown good cause to modify the deadlines stipulated to in the Sixth Amended Scheduling Order nor that its failure to act was the result of excusable neglect. Each issue is discussed in order below.

#### A. Good Cause

J White has failed to show good cause for a seventh amended scheduling order. J White's motion for the new scheduling order does not even mention the fact that the deadline had passed much less address the untimeliness of the motion to amend or describe efforts to meet the deadlines. Even at the July hearing, J White's new counsel was unaware of whether prior counsel had even retained experts even though that task was supposed to be completed in January.[6]

---

[6] On June 12, 2020, prior counsel for J White withdrew as counsel. Sean N. Egan appeared in a limited capacity as new counsel for J. White on July 7, 2020 for purposes of the scheduling hearing only. J White has not argued that the lapsed deadlines were the result of prior counsel's lack of diligence. However, even if it did, the court would not find good cause to amend the scheduling order. J White freely chose its attorney and ratified its attorneys' actions by choosing to stay with prior counsel for over six months after the deadlines lapsed. *Lehman Bros. Holdings v. Gateway Funding Diversified Mortg. Servs., L.P.,* 785 F.3d 96, 102 (3d Cir. 2015) (holding that a party had not shown good cause where counsel could have been more diligent in conducting discovery, because "parties cannot avoid the consequences of the acts or omissions of [their] freely selected agent[s]" (internal quotation marks omitted)).

Moreover, the court finds J White's assertions that the amended deadlines are for the benefit of the New Defendants unpersuasive because J White never even attempted to confer with the New Defendants regarding the amended scheduling order or the dates proposed therein. Moreover, the only New Defendant that is or is likely to remain a defendant in this action is the subsidiary of Original Defendant AMC and, therefore, has no reason to need additional discovery. For these reasons, the court concludes that J White has failed to show good cause to modify the expert disclosure deadline or other deadlines in the Sixth Amended Scheduling Order.[7]

      B.      <u>Excusable Neglect</u>

Because "'good cause' requires a greater showing than 'excusable neglect,'" *Broitman,* 86 F.3d at 175, discussing excusable neglect is unnecessary. However, the court does so as an alternative ground for denying J White's motion to extend scheduling for a seventh time. As to the first "excusable neglect" factor, the court finds that "the danger of prejudice" to the Original Defendants is great. The court notes that the issue with this first factor is not the showing of "actual prejudice" but only a "danger." The Original Defendants have shown a danger of prejudice because they have already filed motions for summary judgment. Allowing J White to conduct expert discovery after motions for summary judgment have been filed creates a

---

[7] J White's counsel at the July 7, 2020 hearing candidly acknowledged that New Defendant Berkeley's Motion to Dismiss was likely to be granted given the reasoning in Judge Barlow's prior orders dismissing other New Defendants from this action. In any event, even if Judge Barlow were to deny Berkeley's Motion to Dismiss, Berkeley is being sued chiefly for vicarious liability for underwriters' actions. Therefore, Berkeley's counsel at the July 7, 2020 hearing represented that Berkeley would not need to conduct any discovery, fact or expert, because whatever the discovery now shows is what Berkeley is willing to use at trial. Therefore, the only New Defendant that is likely to remain an active New Defendant is AMC-CA, which also does not need to conduct additional discovery due to its parent company being an Original Defendant.

very real danger that the expert will try and find a factual dispute to get this matter to trial. This "danger of prejudice" weighs in favor of not finding excusable neglect.

The second factor (i.e., the length of delay caused by the neglect and its impact on judicial proceedings) also militates in favor of finding no excusable neglect. As of the filing of this opinion, J White has not disclosed any experts. His prior counsel appears not to have selected any, and, if J White is able to obtain counsel to represent him going forward, that attorney would have to find experts. This is a significant delay which would adversely impact judicial proceedings as explained above with the Original Defendants' pending summary judgment motions. The seven-month delay—which will be longer if J White's new attorney has to find experts—is too long especially given the pending summary judgment motions. Therefore, the court finds that the second factor also slightly favors finding no excusable neglect.[8]

The third factor requires the court to consider the reason for delay and whether it was in the reasonable control of the moving party. Given that the reason for delay is an important, if not the most important, factor in this analysis, *Hamilton*, 302 Fed. Appx. at 798, this does not bode well for J White. The problem with this factor for J White is that the court is still unsure why J White was unable to meet the January 15, 2020 expert disclosure deadline and why there was a

---

[8] The court finds this factor to be slightly in favor of finding no excusable neglect because the parties are going to take depositions that they were unable to schedule during fact discovery although summary judgment motions have been filed. However, the delay from the taking of these depositions is slight compared to what expert discovery is likely to cause due to the fact that as of today's date, no experts have been disclosed and, in any event, any experts will likely need to wait until the depositions have concluded to formulate their opinions and provide reports. Further expert depositions will likely follow. Thus, the delay resulting from expert discovery is much more than the fact-witness depositions the latest of which will take place in early September 2020.

month-long delay to move to extend the deadline. The court also does not know why J White still has yet to find experts even if the motion to extend the scheduling order were granted. Further, the court has no basis to believe that this failure to disclose and move for an extension prior to the disclosure deadline passing was not within J White's control. Therefore, the most important factor heavily weighs against finding excusable neglect here.

The court finds the fourth factor (i.e., good faith) neutral in the excusable neglect analysis because it has no evidence of bad faith. But because of the prior factors, it also has no evidence of excusable neglect and, therefore, refuses to find it here. The court reminds J White that it initiated this case, and therefore has an obligation to prosecute the case in a timely fashion. After being brought into court, the Original and New Defendants have a right to an efficient and timely conclusion to this case. Saving J White from its neglect will not accomplish that and, therefore, J White's motion for a seventh amended scheduling order is denied.

## II. Briefing Schedules for the Pending Summary Judgment Motions

Both AMC Defendants and RLL Defendants filed motions for summary judgment on July 6, 2020.[9] At the hearing, the parties requested the court enter briefing schedules for the summary judgments upon determination of the instant Motion for Amended Scheduling Order.

The parties are directed to meet and confer to agree upon briefing deadlines for the pending summary judgment motions. If they are able to agree, the parties should file a stipulated motion for entry of their proposed briefing schedule within 7 days from the date of this Order. In the event the parties are unable to agree upon all deadlines, the Original Defendants should file

---

[9] ECF Nos. 265, 269.

an appropriate motion with the court concerning scheduling. If such a motion is filed, the court will promptly set a scheduling hearing without an opposition memorandum needing to be filed. The court will then set briefing schedules for the summary judgment motions at that hearing.

## ORDER

Based on the foregoing, J White's motion[10] to modify the deadlines established in the Sixth Amended Scheduling Order is DENIED.

DATED this 27th day of July 2020.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[10] ECF No. 213.